IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ASHLAND JEWELERS, INC., an )
Illinois corporation, PJ's PAWN )
PLUS, INC., a Missouri limited )
liability company, MISSOURI COIN CO., )
INC., a Missouri corporation, EXCEL )
PAWN, INC., a Minnesota corporation, )
and CN CASH FOR GOLD, LLC, a )
Kansas limited liability company, )
individually and on the behalf of a class )
of all other persons and/or entities )
similarly situated, )
 )
 )
          Plaintiffs, )
          Counter-Defendants. )
v. ) No. 10 C 4690
 )
 )
NTR METALS, LLC, a Texas limited )
liability company, a/k/a North Texas, )
Refining, LLC, )
 )
          Defendant, )
         Counter-Plaintiff. )

## OPINION AND ORDER

    This is a putative nationwide class action. The five named plaintiffs are

business entities who purchase jewelry, coins, and other scrap items from customers

based on the value of the metals contained therein. Defendant NTR Metals LLC is a company headquartered in Dallas, Texas with branches in various states and foreign countries. NTR purchases scrap items containing metals from businesses like those of plaintiffs and refines and processes the metal. Defendant allegedly uses the X-Ray Fluorescence method of determining the metal content of scrap. Using this method, NTR can determine the metal content and make a payment within an hour. Plaintiffs allege the fire assay testing method is more accurate for determining metal content, but takes at least two days to determine the metal content and scrap processing companies using the assay method usually take five to seven days to make a payment. Plaintiffs allege that NTR intentionally undermeasures the amount of metal in scrap submitted to it resulting in an underpayment to its customers.

The five named plaintiffs all allege that they brought scrap to defendant and subsequent tests showed that defendant undermeasured and underpaid them for the metal content. Plaintiff PJ Pawn Plus, LLC is located in St. Louis, Missouri and submitted its scrap to defendant's St. Louis branch. Plaintiff Missouri Coin Co., Inc. is located in Des Peres, Missouri and also submitted its scrap to defendant's St. Louis branch. Plaintiff Excel Pawn, Inc. is located in Maplewood, Minnesota and

submitted its scrap to defendant's Dallas location. Plaintiff CN Cash for Gold, LLC is located in Shawnee, Kansas and brought its scrap to defendant's Riverside (Kansas City), Missouri branch. Plaintiff Ashland Jewelers, Inc. is located in Chicago, Illinois and brought its scrap to defendant's Chicago branch. Plaintiffs had samples of the scrap they submitted to defendant retested at companies in Sparks, Nevada; St. Louis; and Los Angeles, California.

The putative class is: "All persons and entities in the United States (including the District of Columbia) who brought precious metals to NTR for refinement and sale in the past five years who received less than fair market value for their material." Compl. ¶ 71. Excluded from the proposed class are persons and entities related to defendant. The counts of the Complaint are labeled as: (1) breach of contract; (2) violations of all states' Consumer Fraud and Deceptive Trade Practices Acts;[1] (3) negligence (as an alternative allegation to Count 2); and (4) unjust enrichment.

Defendant has filed a counterclaim in which it alleges named plaintiffs generally act as middlemen, purchasing scrap from other business entities and

---

[1]Paragraph 98 of the Complaint lists 47 statutes.

reselling it to refiners. Defendant alleges named plaintiffs compete with defendant because defendant also purchases scrap directly from the types of small businesses that sell their scrap to named plaintiffs. Defendant also alleges that Mid-States Recycling and Refining, Inc., which is located in a Chicago suburb, engages in the same type of business as defendant. Although not named as a defendant to the counterclaim, it is alleged that Mid-States provides support for this lawsuit and joins with plaintiffs in attempting to harm defendant's business. The counterclaim alleges abuse of process, conspiracy to commit abuse of process, violation of Illinois consumer fraud statutes, conspiracy to commit business disparagement, violation of the Lanham Act, and conspiracy to commit libel and slander.

Defendant has moved to dismiss on the ground that venue is improper or alternatively, for the convenience of parties and witnesses, to transfer this case to Texas based on 28 U.S.C. § 1404(a). Defendant also moves to compel arbitration as to the claims of Ashland and CN. Additionally, on the merits, defendant has moved for judgment on the pleadings and plaintiffs have moved to dismiss the counterclaim. The last two motions have not been briefed. Since this case will be transferred to Texas, it will be left for the court in Texas to determine whether the

latter two motions should be briefed and granted or denied. The motion to compel arbitration will be addressed first.

The parties agree that their transactions involve interstate commerce and that the Federal Arbitration Act applies to defendant's motion to compel arbitration. While questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration, general state contract law regarding the validity, enforceability, and revocability of contracts is to be applied in that light. *Arthur Andersen LLP v. Carlisle*, 129 S. Ct. 1896, 1902 & n.5 (2009); *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 939 (7th Cir. 2008); *Henrichs Grain, Inc. v. Cargill*, 2010 WL 431900 *2 (C.D. Ill. Jan. 28, 2010). This includes issues regarding contract formation, *Ho-Chunk Nation*, 512 F.3d at 939; who is bound by a contract, *Carlisle*, 129 S. Ct. at 1902; and unconscionability and contracts of adhesion, *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987); *Wallis v. Ad Astra Recovery Servs., Inc.*, 2011 WL 745961 *3 (E.D. Wis. Feb. 24, 2011); *O'Quinn v. Comcast Corp.*, 2010 WL 4932665 *3 (N.D. Ill. Nov. 29, 2010); *Henrichs Grain*, 2010 WL 431900 at *2.

In light of defendant's motion (which is supported by declarations) and plaintiffs' response (which is not supported by any evidentiary materials),[2] it must be determined whether the issue of arbitration can be resolved on the present papers because there is no apparent factual dispute or instead involves material factual disputes that would require discovery and/or an evidentiary hearing. *See* ***Barker v. Trans Union LLC***, 2004 WL 783357 *3 (N.D. Ill. Jan. 23, 2004). A mere denial of facts or assertion of factual disputes is not enough to require a hearing. ***Tinder v. Pinkerton Sec.***, 305 F.3d 728, 735 (7th Cir. 2002); ***Gyptec Iberica v. Alstom Power Inc.***, 2010 WL 3951466 *2 (N.D. Ill. Oct. 5, 2010). The burden of establishing the existence of an agreement to arbitrate is on the party seeking arbitration. ***Fox v. Nationwide Credit, Inc.***, 2010 WL 3420172 *2 (N.D. Ill. Aug. 25, 2010). Once that is established, however, "[t]he party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract." ***Tinder***, 305 F.3d at 735. This is equivalent to the material factual dispute standard for summary judgment, but a formal motion for

---

[2]The court also required that the parties supplement their submissions with copies of the transaction documents pertaining to Ashland's and CN's transactions.

summary judgment is not required. *See id.* at 735-36; *Gyptec*, 2010 WL 3951466 at *2; *Barker*, 2004 WL 783357 at *3.

Regarding CN and Ashland, defendant provides a declaration of an employee from each branch those plaintiffs sold their materials. Those declarations and a declaration from NTR's President establish that, as to each transaction of these plaintiffs alleged in the Complaint (which were in April and May 2010), a Refining Statement was provided. Copies of the Refining Statement and cancelled check for each transaction is provided. The Refining Statement is provided after the metal content has been measured and the amount of payment has been offered, but before the customer determines whether to accept the offer. The back side of each Refining Statement includes 27 paragraphs of "General Terms & Conditions." The introductory paragraph of the Terms & Conditions states that NTR and Customer agree the terms and conditions set forth in the document "shall apply to all transactions between them concerning the within subject matter." Paragraph 23 of the Terms & Conditions provides:

> Any controversy, claim, or dispute regarding the rights of NTR or Customer arising out of a transaction between them or these General Terms and Conditions shall be settled exclusively by arbitration before a single arbitrator in Dallas, Texas in accordance with the rules and procedures of the

American Arbitration Association for commercial arbitration.
Any decision rendered in such arbitration is binding on all of
the parties thereto, and judgment thereon may be entered in
any court of competent jurisdiction. Fees and expenses of the
arbitrator and arbitration shall be divided equally between the
parties.

Paragraph 19 provides: "The rights and obligations of NTR and Customer hereunder shall be governed by, construed, and enforced in accordance with the laws of the State of Texas, without regard to the conflicts of law principles thereof."[3]

Plaintiffs do not directly dispute these facts nor even conclusorily deny them. Instead, they contend defendant has not made a sufficient showing because the front of the Refining Statements were not provided, defendant does not state whether or not the documents were signed, and defendant does not detail the manner in which the Statements were provided to plaintiffs. The first two issues are moot because the Refining Statements were provided and there is no

---

[3]In response to the motion to compel arbitration, plaintiffs assert that state law applies, but make no choice of law contentions. They also generally do not cite any case law, instead asserting without support what they contend the law is. In responding to the motion to transfer, the question plaintiffs raise regarding the applicability of Texas law is whether the contract itself is unenforceable because unconscionable. Since plaintiffs present no basis for choosing Illinois or some other law, while defendant cites the contractual provision and cites to Texas law, Texas law will be applied.

contention they were signed. Plaintiffs' principal contentions, however, are that defendant waived its opportunity to rely on the arbitration clause and the arbitration provisions are otherwise unenforceable.

Plaintiffs' assertions go to unconscionability. Unconscionability, however, is an affirmative defense on which plaintiffs bear the burden of proof, ***950 Corbindale, L.P. v. Kotts Capital Holdings Ltd. P'ship***, 316 S.W.3d 191, 196 (Tex. App. 2010); ***Looney v. Irvine Sensors Corp.***, 2010 WL 532431 *6 (N.D. Tex. Feb. 15, 2010); *see also* ***Estate of Davis v. Wells Fargo Bank***, 633 F.3d 529, 2011 WL 93030 *4 (7th Cir. Jan. 12, 2011) (Illinois law); defendant is not required to present facts establishing the contract is conscionable. Defendant has made an undisputed showing of a contract containing an arbitration provision. It is a broad provision that readily encompasses plaintiffs' claims and plaintiffs do not contend otherwise. It is also broad enough to encompass defendant's counterclaim, including the claims for abuse of process, disparagement, libel, and slander which all arise out of transactions between the parties.

Citing a single district court case from 1986, plaintiffs contend defendant has waived its right to invoke arbitration because defendant moved to

dismiss or transfer this lawsuit and has filed counterclaims. The motion to compel arbitration, however, was filed within a few weeks of the motion to dismiss, which is based on lack of venue and does not go to the merits of the claims. The motion to compel arbitration was filed on the same date defendant first filed an answer and counterclaims. The original answer and counterclaim also expressly states that it is subject to and not waiving the motion to compel arbitration. Defendant also acknowledges that, to the extent the motion to compel arbitration is granted, its counterclaims against these plaintiffs are also subject to arbitration. Defendant has not waived arbitration. *See **Halim v. Great Gatsby's Auction Gallery, Inc.**,* 516 F.3d 557, 562 (7th Cir. 2008); ***Sharif v. Wellness Int'l Network, Ltd.**,* 376 F.3d 720, 726-27 (7th Cir. 2004); ***Williams v. Cigna Fin. Advisors, Inc.**,* 56 F.3d 656, 661-62 (5th Cir. 1995).

Plaintiffs contend the arbitration provision is unenforceable because it is not conspicuous enough.[4] The only case cited to support this contention is *Faur v.*

---

[4]The arbitration provision provides that "[a]ny . . . dispute regarding the [parties'] rights . . . arising out of . . . these General Terms and Conditions shall be settled exclusively by arbitration . . . ." Arguably, contentions that the Terms and Conditions as a whole (including the arbitration provision) are unenforceable as unconscionable are issues for the arbitrator. *See **Rent-A-Center, West, Inc. v. Jackson**,* 130 S. Ct. 2772, 2777-78 & n.1 (2010). The parties, however, both contend the present contentions regarding unconscionability and unenforceability are for the court to resolve. Today's ruling is without prejudice to raising unconscionability issues before the arbitrator.

*Sirius Int'l Ins. Corp.*, 391 F. Supp. 2d 650, 658 (N.D. Ill. 2005), which concerns forum-selection clauses. **Faur** holds that a forum-selection clause contained on page two of a 21-page insurance contract is enforceable, noting that the insured did not allege she did not have an opportunity to read the contract before signing it. **Faur** also cites a UCC case for the proposition that "acceptable terms to a contract may be 'as inconspicuous as the forum-selection clause on the back of the cruise ship ticket.'" *Id.* (quoting *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1453 (7th Cir. 1996)). Here, the arbitration clause was contained in one page of contract terms on the back of a transaction statement provided by defendant. Being on the back of the statement does not make the clause *per se* unenforceable. *See Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (*per curiam*); *Gilliam v. Global Leak Detection U.S.A., Inc.*, 141 F. Supp. 2d 734, 737-38 (S.D. Tex. 2001); *see also Harris v. Green Tree Fin. Corp.*, 183 F.3d 173 (3d Cir. 1999) (Pennsylvania law).

Plaintiffs also assert the arbitration clause is unenforceable because an adhesion contract, it lacks mutuality, and it is not signed by plaintiffs. Under Texas law, adhesion contracts are not *per se* unenforceable, *In re U.S. Home Corp.*, 236 S.W.3d 761, 764 (Tex. 2007); and it is not necessarily required that the

contract provisions be signed. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005). Plaintiffs' assertion of a lack of mutuality is based on defendant not seeking arbitration of its counterclaim. As previously noted, defendant agrees those claims should also be arbitrated.

Citing *In re DirecTV Early Cancellation Litig.*, 738 F. Supp. 2d 1062, 1081 (C.D. Cal. 2010), plaintiffs contend the arbitration clause is unenforceable due to unequal bargaining power. Applying Arizona law, this case states: "Contract terms are substantively unconscionable when they are 'so one-sided as to oppress or unfairly surprise an innocent party,' when there is 'an overall imbalance in the obligations and rights imposed by the bargain,' or when there is 'significant cost-price disparity.'" *Id.* (quoting *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51, 58 (Ariz. 1995)). Again, this is an unconscionability issue on which plaintiffs bear the burden of establishing the affirmative defense. Plaintiffs do not provide sufficient facts to support a possible material factual dispute as to this issue. An arbitration provision is not unenforceable as unconscionable simply based on an imbalance in bargaining power. There must be "a well-supported claim that the clause resulted from the sort of fraud or overwhelming economic power that would provide grounds for revocation of any contract." *AdvancePCS*, 172 S.W.2d

at 608. Plaintiff has not presented facts or evidence establishing a material factual dispute that requires a further hearing.

The claims of plaintiffs CN and Ashland and NTR's counterclaims against them will be dismissed without prejudice. The parties shall promptly institute arbitration proceedings in Dallas, Texas.

The next question to address is whether the claims of the remaining named plaintiffs should remain here or be transferred to Texas.[5] With Ashland out of the case, the named plaintiffs no longer have any connection to Illinois.

Jurisdiction of this case is based on diversity. Venue is proper "in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." Since there is only one defendant, the third subsection will not come into play.

---

[5]Defendant requests dismissal based on a lack of venue. Even if the court were to hold venue is lacking, the case would not be dismissed. Instead, in the interest of justice, the court would exercise its discretion to transfer the case. *See* 28 U.S.C. § 1406(a).

Defendant does not dispute that it does business in Illinois and is subject to personal jurisdiction in Illinois. Under 28 U.S.C. § 1391(c), a corporation is considered to reside in any state in which it is subject to personal jurisdiction. Although defendant is a Texas limited liability company, the provision of section 1391(c) is applied to such unincorporated associations. ***Dental Arts Lab., Inc. v. Studio 360 The Dental Lab, LLC***, 2010 WL 4877708 *9 (N.D. Ill. Nov. 23, 2010); ***Signode v. Sigma Techs. Int'l, LLC***, 2010 WL 1251448 *4 (N.D. Ill. March 24, 2010); ***Century Consultants, Inc. v. Choctaw Racing Servs., LLC***, 2005 WL 2671248 *1 (E.D. Wis. Oct. 18, 2005); Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Fed. Prac. & Proc.: Jurisdiction 3d* § 3811.1 at 339-40 & n.19 (2007). *Contra* **Bullock v. Asset Acceptance, LLC**, 2008 WL 4280141 *1 (N.D. Ill. Sept. 15, 2008). Under, § 1391(a)(1), venue is proper in Illinois.

It still must be considered whether, under § 1404(a), this case should be transferred to the District Court in Texas. The parties agree that venue in Texas would be proper since defendant is located there. "A plaintiff's choice of forum is entitled to substantial weight under § 1404(a), particularly where it is also the plaintiff's home forum. Indeed, a plaintiff's choice of forum should rarely be

disturbed unless the balance weighs strongly in the defendant's favor." *Clear Channel Outdoor, Inc. v. Rubloff Oakridge Algonquin L.L.C.*, 2003 WL 22382999 *3 (N.D. Ill. Oct. 16, 2003) (quoting *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill.1995)). *See also In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003). However, where the operative facts have little connection to the forum, the plaintiff's choice of forum is given less weight. *See Heartland Packaging Corp. v. Sugar Foods Corp.*, 2007 WL 101815 *2 (S.D. Ind. Jan. 9, 2007); *Barela v. Experian Info. Solutions, Inc.*, 2005 WL 770629 *3 (N.D. Ill. April 4, 2005); *Kelly v. McDonald*, 2004 WL 526741 *2 (N.D. Ill. March 10, 2004); *Heston v. Equifax Credit Info. Servs.*, 2003 WL 22243986 *1 (N.D. Ill. Sept. 26, 2003); *Alberding Estate Admin. Trust ex rel. Moore v. Vinoy Park Hotel Co.*, 2003 WL 22176072 *2 (N.D. Ill. Sept. 15, 2003); *Confederation Des Brasseries De Belgique v. Coors Brewing Co.*, 2000 WL 88847 *3 (N.D. Ill. Jan. 20, 2000); *Anchor Wall Sys., Inc. v. R & D Concrete Prods., Inc.*, 55 F. Supp. 2d 871, 874 (N.D. Ill. 1999). "The movant bears the burden of proving, by reference to particular facts and circumstances, that the transferee forum is 'clearly more convenient.'" *Clear Channel*, 2003 WL 22382999 at *3 (quoting *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d

1286, 1293 (7th Cir. 1989)); *Tong v. Direct Trading Corp.*, 2003 WL 22282466 *3 (N.D. Ill. Oct. 1, 2003). Both private and public interests must be considered. Private interests that are considered include: (1) the plaintiffs' choice of forum; (2) the situs of material events; (3) ease of access to sources of proof; (4) conveniences for the parties; and (5) conveniences for the witnesses and the availability of compulsory process. *Cypress Med. Prods., L.P. v. Worthington*, 2005 WL 936903 *2 (N.D. Ill. April 18, 2005); *Barela*, 2005 WL 770629 at *3; *Tatar v. Trans Union L.L.C.*, 2003 WL 22478941 *1 (N.D. Ill. Oct. 31, 2003); *Clear Channel*, 2003 WL 22382999 at *3; *Heston*, 2003 WL 22243986 at *1; *United Air Lines, Inc. v. Mesa Airlines, Inc.*, 8 F. Supp. 2d 796, 798 (N.D. Ill. 1998). Public interests take into account the interests of justice and include: (1) the speed of the proceeding; (2) the court's familiarity with applicable law; and (3) the relation of the community to the occurrence and the desirability of resolving the controversy in its locale. *IFC Credit Corp. v. Eastcom, Inc.*, 2005 WL 43159 *2 (N.D. Ill. Jan. 7, 2005); *R.E. Davis Chem. Corp. v. International Crystal Labs., Inc.*, 2004 WL 2191328 *5 (N.D. Ill. Sept. 27, 2004) (quoting *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 961-62 (N.D. Ill. 2000)); *Tatar*, 2003 WL 22478941 at *1; *Clear Channel*, 2003 WL 22382999 at *3.

None of the remaining named plaintiffs are located in Illinois. Even if a nation-wide class is ultimately certified that includes absent class members from Illinois, there is nothing to indicate a disproportionate number of class members would be in Illinois. *Compare* ***Espenscheid v. DirectSat USA, LLC***, 708 F. Supp.2d 781, 787 (W.D. Wis. 2010) (deference given plaintiffs' choice of Wisconsin forum since 40% of putative class members were in Wisconsin and majority of putative class members were in Midwest). Plaintiffs' choice of Illinois is entitled to little weight. *See* ***Jaramillo v. DineEquity, Inc.***, 664 F. Supp. 2d 908, 914 (N.D. Ill. 2009) (in case seeking nationwide class, plaintiffs' choice of forum accorded little weight); ***Gueorguiev v. Max Rave, LLC***, 526 F. Supp. 2d 853, 857 (N.D. Ill. 2007) (same); ***Beesley v. Int'l Paper Co.***, 2007 WL 2458228 *2 (S.D. Ill. Aug. 24, 2007) (collecting cases).

Here, the actual sales occur throughout the country where defendant's branches are located. Neither side provides information or represents that any particular state or section of the country has a high proportion of the transactions at issue. It is alleged that defendant engaged in an intentional and fraudulent pattern or scheme. The direction of any such organized scheme is most likely to have originated from Dallas, where defendant's headquarters are located. All the

officers and employees responsible for setting the company's policy are located there. Defendant provides a list of 10 current employees located in Dallas who are likely to be material witnesses in this case. Also, NTR's former President, who was still President during times pertinent to this lawsuit, lives in the Dallas area. He would be subject to process in Texas, but not in Illinois. The only other potential witnesses that have been identified are one or two employees at the branches where named plaintiffs conducted their transactions and plaintiffs' experts located in California and Nevada. Even though Ashland, the Illinois named plaintiff, is no longer in this case, it is still possible that parties will conduct discovery regarding Ashland's alleged transactions. Defendant represents that its electronic storage of documents is located in Dallas, but documents in such a format can be accessed from anywhere. At most, that means a Rule 30(b)(6) deponent regarding such documents is located in Dallas. There are also some paper documents in Dallas. As to witnesses, Dallas is clearly more convenient than Chicago.

Under the arbitration provisions, the arbitrations of claims between CN, Ashland, and NTR will occur in Texas, as well as any other claimants whose claims may end up in arbitration. On the briefs presently before the court, it is

accepted that Texas law applies to claims in this case. Defendant points to statistics supporting that the average case progresses somewhat more quickly in the Northern District of Texas than in the Northern District of Illinois.[6] These are public interests that provide some support for transferring the case to Texas.

Dallas is clearly a more convenient location for this litigation than is Chicago. Public interests also support transferring the case to Dallas. The motion to transfer will be granted.

IT IS THEREFORE ORDERED that defendant's motion to compel arbitration [25] is granted. Defendant's motion to dismiss or transfer [11] is granted in part and denied in part. Defendant's motion to establish a briefing schedule [74] is denied without prejudice. The claims of plaintiffs Ashland Jewelers, Inc. and CN Cash for Gold, LLC and the counterclaims against these two parties are dismissed without prejudice. Defendant NTR and plaintiffs Ashland Jewelers, Inc. and CN Cash for Gold, LLC, shall forthwith initiate arbitration proceedings as to those claims in Dallas, Texas. Pursuant to 28 U.S.C.

---

[6]Defendant did not raise this factor until its reply. After defendant's reply was filed, plaintiff was permitted to file a supplement addressing additional factual issues. Thus, plaintiff had the opportunity to address new issues raised in the reply.

§ 1404(a), the Clerk of the Court is directed to transfer this case to the United States District Court for the Northern District of Texas, Dallas Division.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: MARCH 31, 2011